**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| JONATHAN GREEN; JGCRE, INC.; and MILDRED GREEN, *as personal representative of the estate of Nathaniel Green*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| RAY NASH, *former Dorchester County Sheriff*; LUTHER CARL KNIGHT, *current Dorchester County Sheriff*; ALAN MCCRORY WILSON, *Attorney General of the State of South Carolina*; HARLEY LITTLETON KIRKLAND, *Assistant Attorney General of the State of South Carolina*; MARK KEEL, *South Carolina Law Enforcement Division*; ADAM L. WHITSETT, *South Carolina Law Enforcement Division*; and PAUL THOMAS AHEARN, III, *South Carolina Law Enforcement Division*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:21-cv-01304-DCN-MGB **ORDER** |
| Defendants. | ) ) ) ) | |

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 44, that the court grant in part and deny in part defendants Ray Nash ("Nash"), Luther Carl Knight ("Knight"), Alan McCrory Wilson ("Wilson"), Harley Littleton Kirkland ("Kirkland"), Mark Keel ("Keel"), Adam L. Whitsett ("Whitsett"), and Thomas Ahearn, III's ("Ahearn") (collectively, "defendants") motion to dismiss, ECF No. 19. For the reasons set forth below, the court partially adopts and partially departs from the R&R, grants in part and denies in part defendants' motion,

1

and dismisses all claims against defendants except for plaintiffs' § 1983 claim against Keel.

## I.   BACKGROUND

The R&R ably recites the facts, and the parties do not object to the R&R's recitation thereof.  Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

In 1999, plaintiff Jonathan Green ("Jonathan") pleaded "no contest" to three sexual offenses in the Fairfax County, Virginia juvenile court.  Jonathan was fifteen years old at the time, and he was sentenced to thirty days in juvenile detention, mandatory counseling, and probation.  In 2000, Jonathan and his family moved to Dorchester County, South Carolina while he was still on probation.  Upon arriving in South Carolina, the Dorchester County Sheriff's Office informed Jonathan that he was required to be fingerprinted, to be photographed, and to register as a sex offender for the rest of his life.  According to the complaint, no one had informed Jonathan's family of these requirements prior to their move.  Nathaniel Green ("Nathaniel"), Jonathan's father, inquired about whether Jonathan could simply move back to Virginia, but the Sheriff's Office responded that if Jonathan did so, they would put a warrant out for his arrest and declare him a fugitive of the state.  The Sherriff's Office subsequently placed Jonathan on the public sex offender registry in South Carolina.

In 2015, Jonathan decided to search his name on the sex offender registry and discovered that his record was no longer available to view.  Nathaniel, who at some point secured employment at the Dorchester County Sheriff's Office jail, called his direct

supervisor and was allegedly informed that "Jonathan had been completely removed from the sex offender registry." ECF No. 8-2 at 3:10–11. Despite this representation, Jonathan later discovered that "his name was never actually removed from South Carolina's sex offender registry" and instead, "was moved to a more private registry." Id. at 4:2–4. The complaint alleges that Jonathan has suffered various injuries throughout his adult life because of his placement on the South Carolina sex offender registry. Such alleged injuries include claims that plaintiff JGCRE, Inc. ("JGCRE"), a commercial real estate company founded by Jonathan, has encountered difficulties in obtaining brokers licenses in other states and that Jonathan remains unable to travel internationally without being harassed or denied entry.

On May 3, 2021, Jonathan, Nathaniel,[1] and JGCRE (together, "plaintiffs"), proceeding pro se, initiated this action against the Dorchester County Sheriff's Office, the South Carolina Law Enforcement Division ("SLED"), and defendants in their official capacities. ECF No. 1. On July 15, 2021, plaintiffs filed an amended complaint. ECF No. 8, Amend. Compl. Pursuant to the amended complaint, now the operative complaint, plaintiffs voluntarily dismissed the Dorchester County Sheriff's Office and SLED as defendants and asserted causes of action for: (1) violation of Jonathan's Fourth Amendment right to privacy, (2) violation of Jonathan's Fifth Amendment right to free movement, (3) violation of Jonathan's Eighth Amendment right to freedom from cruel and unusual punishment; (4) violation of Jonathan's Fourteenth Amendment rights, and (5) wrongful denial of plaintiffs' requests for information under the Freedom of

---

[1] Nathaniel has since passed away, and on November 4, 2021, the Magistrate Judge substituted plaintiff Mildred Green ("Mildred"), as personal representative of Nathaniel's estate.

Information Act ("FOIA").  Id.  Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local

Civil Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to

Magistrate Judge Baker.

On October 7, 2021, defendants filed a motion to dismiss the complaint in its

entirety.  ECF No. 19.  On November 5, 2021, plaintiffs responded in opposition.  ECF

No. 34.  On December 17, 2021, Magistrate Judge Baker issued the R&R, recommending

the court grant in part and deny in part the motion to dismiss.  ECF No. 44.  On January

4, 2022, Keel, Whitsett, and Ahearn filed their objections to the R&R.  ECF No. 46.

Plaintiffs did not respond, and the time to do so has now elapsed.  On January 6, 2022,

plaintiffs filed their objections to the R&R.  ECF No. 48.  On February 8, 2022, plaintiffs,

with leave of the court, supplemented those objections with amended objections to the

R&R.  ECF No. 57-1.  Defendants responded to plaintiffs' objections on February 22,

2022, ECF No. 60, and plaintiffs replied on February 28, 2022, ECF No. 62.  As such, the

matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the

Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C.

§ 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of

the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The

recommendation of the Magistrate Judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court.  Mathews v. Weber, 423

U.S. 261, 270-71 (1976).  However, de novo review is unnecessary when a party makes

general and conclusory objections without directing a court's attention to a specific error

in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 558 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

## III.  DISCUSSION

Defendants move to dismiss all claims against them for lack of subject-matter jurisdiction and failure to state a claim.  The Magistrate Judge addressed defendants' motion by arranging plaintiffs' claims into two groups: (1) claims brought under 42 U.S.C. § 1983, and (2) claims brought under the South Carolina FOIA.  The Magistrate Judge ultimately recommended that the court deny the motion to dismiss as to plaintiffs' § 1983 claim for injunctive relief against Keel and as to plaintiff's FOIA claim against Keel, Whitsett, and Ahearn (the "SLED defendants") stemming from a 2020 FOIA request.  The Magistrate Judge recommended that the court grant the motion to dismiss in all other respects.  Plaintiffs object to the R&R's findings regarding their § 1983 claims. Defendants object to the R&R's finding regarding the FOIA claims, arguing that the SLED defendants are improper defendants.  The court addresses the two set of claims in turn, ultimately finding that the lawsuit should proceed against Keel in his official capacity for the § 1983 claim but not against any defendants for the FOIA claim.

### A.  Section 1983 Claims

In the amended complaint, plaintiffs assert various claims arising out of violations of Jonathan's constitutional rights.  In their motion to dismiss, defendants argued that each of the claims is barred by sovereign immunity.  The Eleventh Amendment bars suits by citizens against non-consenting states brought either in state or federal court.  See Alden v. Maine, 527 U.S. 706, 712 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 10 (1890).  Such immunity extends to arms of the state, including a state's agencies and instrumentalities and employees.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984); Regents of the

6

Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity for state officers "which permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law."  McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010).  A violation is considered ongoing "when a state officer's enforcement of an allegedly unconstitutional state law is threatened."  Id. (citation omitted); see also Seminole Tribe, 517 U.S. at 73 (describing prospective injunctive relief as that necessary to "end a continuing violation of federal law").

Here, plaintiffs brought their § 1983 claims against two members of the South Carolina Attorney General's Office, including the Attorney General; three SLED officials; the current sheriff of Dorchester County; and a former sheriff of Dorchester County.  Plaintiffs seek "consequential, punitive[,] and compensatory damages in the amount of 2.5 million dollars for each [of] count[s] 1-4."  Amend. Compl. at 6.  The Magistrate Judge determined that plaintiffs were suing defendants in their official capacities as state officials or employees.  As a result, the Magistrate Judge recommended the court find that defendants are entitled to Eleventh Amendment immunity with respect to plaintiffs' § 1983 claims for monetary damages.  Additionally, the Magistrate Judge construed the complaint as further seeking injunctive relief.  Although Ex parte Young permits suits against state officials for injunctive relief, the R&R found that only Keel, the director of SLED, could serve as a proper Ex parte Young defendant.

7

Regarding the claims for monetary damages, plaintiffs do not object to the R&R's finding that the claims against defendants in the South Carolina Attorney General's Office and Whitsett and Ahearn are barred by sovereign immunity. In the absence of an objection, the court "must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (internal quotations and citation omitted). The court finds no clear error in the Magistrate Judge's finding. However, plaintiffs raise several objections regarding the suits against Nash and Knight, the former and current sheriff of Dorchester County, respectively. First, defendants argue that "because the Dorchester County Sheriff's Office is part of the local government [and] not the state government," Nash and Knight are not state officials and are thus not immunized by the Eleventh Amendment. ECF No. 48 at 6. Defendants previously raised this argument in their response to the motion to dismiss. The Magistrate Judge considered the argument in the R&R and rejected it, finding that in South Carolina, a sheriff's office is considered an arm of the state. ECF No. 44 at 7 n.2. In their objections, defendants argue that the R&R failed to conduct an analysis of whether a political entity is an arm of the state as set forth in Ram Ditta ex rel. Ram Ditta v. Maryland Natural Capital Park and Planning Commission, 822 F.2d 456 (4th Cir. 1987). ECF No. 57-1 at 3.

The court finds that even after a de novo review of the issue, Nash and Knight are properly categorized as state officials and are immune from suits brought against them in their official capacities. Plaintiffs are correct that typically, courts in this circuit apply a four-factor test, as announced in Ram Ditta, to determine whether a governmental entity is an arm of the state for Eleventh Amendment purposes. Those factors are: (1) "whether

8

the state treasury will be responsible for paying any judgment that might be awarded"; (2) "whether the entity exercises a significant degree of autonomy from the state"; (3) whether the entity "is involved with local versus statewide concerns"; and (4) "how [the entity] is treated as a matter of state law." Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 261 (4th Cir. 2005) (citing Ram Ditta, 822 F.2d at 457–58) (other citations omitted). Among these factors, the first factor is "the most important consideration." Id. (quoting Ram Ditta, 822 F.2d at 457).

Courts following Ram Ditta have consistently found that in South Carolina, sheriffs are agents of the state. For example, in Doe 202a v. Cannon, the court held that the sheriff of the Charleston County Sheriff's Office was immune from suit. 2018 WL 317818, at *4 (D.S.C. Jan. 8, 2018). In analyzing the Ram Ditta factors,[2] the court in Cannon looked to the decisions of other courts that had analyzed the relationship between county sheriff's offices and the state and noted that those courts similarly found that sheriff's offices were arms of the state. See id. at *3–4 (citing Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) and Gulledge v. Smart, 691 F. Supp. 947, 954–55 (D.S.C. 1988)); see also Green v. S.C. Law Enf't Div., 2018 WL 1701982, at *3 (D.S.C. Mar. 5, 2018), report and recommendation adopted, 2018 WL 1697300 (D.S.C. Apr. 6, 2018) ("[T]he Fourth Circuit has considered the role of sheriffs in the state of South Carolina and has specifically determined that, in their official capacities, South Carolina's sheriffs are immune from federal lawsuits . . . ."). Although plaintiffs attempt to distinguish the

---

[2] The court in Cannon referred to the four factors as "the Hoover factors," but they refer to the same factors. See Cannon, 2018 WL 317818, at *3 ("Hoover . . . relied on the factors set out in Maryland Stadium Authority . . . , which, in turn, applied the factors from Ram Ditta."); see also S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008).

Dorchester County Sheriff's Office from this long line of established precedent, their arguments fail to move the needle. Specifically, plaintiffs argue that in <u>Cannon</u> and its predecessors, the courts determined that the first <u>Ram Ditta</u> factor was inconclusive based on the record before them but that the same cannot be said here. But plaintiffs are only partially correct. In <u>Cromer</u>, the Fourth Circuit found that even though judgments against the Greenville County sheriff are paid by the South Carolina State Insurance Reserve Fund, it was unable to discern from the record whether the state treasury would be partially liable for a judgment in that case. 88 F.3d at 1332. As such, the court turned to the remaining factors and concluded that under those factors, the sheriff was clearly an arm of the state. <u>Id.</u> Plaintiffs agree that judgments against the Dorchester County Sheriff's Office are paid out of the South Carolina State Insurance Reserve Fund but contend that under the South Carolina Tort Claims Act, political subdivisions are required to pay their own insurance premiums. ECF No. 57-1 at 5–6 (citing S.C. Code Ann. § 15-78-160). However, nothing in that statute excludes the possibility that the state may simultaneously contribute to the Insurance Reserve Fund, and indeed, the court reads <u>Cromer</u> as making that same observation. <u>See</u> S.C. Code § 15-78-160 ("If an agency or political subdivision fails to pay any required premium within sixty days from the date the premium is invoiced, the State Budget and Control Board may cancel the policy for nonpayment of premium . . . ."). Additionally, while the court must accept as true all factual allegations contained in the complaint, the court finds that plaintiffs do not present any other factual allegations that Dorchester County pays its own premiums to

the exclusion of the state.[3]  Plaintiffs argue the contrary, claiming that they "indicate[] in their Objection . . . that [defendants] do[] not allege that the State treasury will be affected" and "show[] through example and statutory interpretation that there is little reason to believe that the treasury would be affected."  ECF No. 62 at 2.   However, such statements are nothing more than conclusory allegations that the court need not credit.  Finally, even if the court were to find that plaintiffs allege that the Dorchester County Sheriff's Office is self-funded, other courts have found that such allegations are still insufficient to distinguish Cromer.  In English v. Clarke, the plaintiffs specifically maintained that the Richland County Sheriff was "self-funded with no excess insurance." 2021 WL 4597184, at *4 (D.S.C. June 2, 2021), report and recommendation adopted, 2021 WL 4398371 (D.S.C. Sept. 27, 2021).  The court concluded that even with that evidence, the circumstances mirrored those in Cromer because the record was inconclusive as to whether the state treasury would be impacted by a lawsuit.  Id.  The court reaches the same conclusion here.  Accordingly, the court looks to the remaining Ram Ditta factors and finds that those factors swing definitively in favor of finding that sheriffs are agents of the state.  Namely, "(1) the state constitution establishes the elective office of county sheriff and his term, (2) the General Assembly prescribes his duties and

---

[3] In their objections, plaintiffs attach the Dorchester County Budget for 2022. ECF No. 48-1 at 1.  For plaintiffs' benefit, the court considers this document a public record such that it can take judicial notice of it without converting the proceedings to one for summary judgment.  See Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) ("[C]ourts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint.").  Even so, the court does not find that the budget report alters the Ram Ditta calculus.  While the report shows that certain county expenditures are attributed to the sheriff's office, e.g., ECF No. 48-1 at 16, nothing in the report suggests, as the court discussed above, that the state is not partially liable for any judgments against the sheriff's office.

compensation, (3) the sheriff's arrest powers relate primarily to state offenses, (4) the county territorial jurisdiction is prescribed by the legislature's designation of county boundary lines, and (5) the Governor is empowered to remove the sheriff from office for misconduct and fill a vacancy until the next election." Id. (citing Gulledge, 691 F. Supp. at 954–55).

Second, plaintiffs object to the R&R by arguing that even if Nash and Knight were considered state officials, they were "acting on behalf of Dorchester County as county policy makers" when they made the decision to keep Jonathan on the state sex offender registry. ECF No. 48 at 13. In support of their argument, plaintiffs aver that the Dorchester County sheriff created a local policy that "did not necessarily apply to the rest of the state" and attempt to illustrate their argument by claiming that had Jonathan initially moved to Greenville County, for instance, the Greenville County sheriff may have made a different decision regarding whether to place Jonathan on the public sex offender registry. Id. at 14. But plaintiffs fail to cite any authority suggesting that officials can act as arms of the state on one hand, and as members of a local municipality on the other, when performing different job functions. Indeed, such a notion is directly undermined by the aforementioned cases to have considered whether sheriffs are arms of the state for Eleventh Amendment purposes. In those cases, if a sheriff could be deemed as strictly acting on behalf of the county when performing duties that only impacted the locality, none of the sheriffs would have been deemed state officials. See Cromer, 88 F.3d at 1318 (finding that the Eleventh Amendment immunized a sheriff who fired the plaintiff from his job as a lieutenant); English, 2021 WL 459184, at *1 (same, where a sheriff purportedly obtained coerced and false statements from the plaintiffs and falsely

arrested the plaintiffs); <u>Green</u>, 2018 WL 1701982, at *2 (same, where a sheriff allegedly arrested the plaintiff without a warrant to place a tracking device and to access his property).  Accordingly, the court finds no basis in law to differentiate Nash and Knight based on their alleged actions as they related to Jonathan and finds that they are thus state actors under the <u>Ram Ditta</u> factors.

Third, plaintiffs briefly argue that if the court barred Jonathan from recovering monetary damages, Jonathan would be deprived of his Fifth Amendment right to just compensation.  However, plaintiffs did not raise this argument in their response to the motion to dismiss, and the court may overrule the objection on this basis alone.[4] Regardless, the objection lacks merit as plaintiffs cite no authority for finding that there has been a "taking" such that the Fifth Amendment's takings clause would apply. Plaintiffs briefly aver that Jonathan's "information can be considered property," and that it was "released to the public for public use."  ECF No. 48 at 20–21.  Fatally, however, plaintiffs do not explain <u>how</u> Jonathan's juvenile records and information constitute

---

[4] "Consideration of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration" on a motion for summary judgment. <u>Hynes v. Squillace,</u> 143 F.3d 653, 656 (2d Cir. 1998).  When a magistrate judge is hearing a matter pursuant to his or her authority to make a report and recommendation, "a claimant must present all his claims squarely to the magistrate judge that is, the first adversarial forum, to preserve them for review."  <u>McCarthy v. Giron</u>, 2014 WL 2696660, at *13 (E.D. Va. June 6, 2014).  "A petitioner whose case is referred to the Magistrate Judge for initial handling (for findings, conclusions, and recommendation) cannot for the first time in his objections to the Magistrate Judge's findings, conclusions, and recommendation raise a ground not asserted in the petition as it existed when the matter was before the Magistrate Judge for consideration."  <u>Thornton v. Johnson</u>, 2001 WL 331983, at *1 (N.D. Tex. Apr. 3, 2001); <u>see also</u> <u>Clark v. Thompson</u>, 2014 WL 1234347, at *2 (D.S.C. March 25, 2014) (noting that a party's new argument raised for the first time in his objections "must be overruled as untimely and thus improper"); <u>Buford v. Ocwen Loan Servicing, LLC,</u> 2018 WL 6617646, at *3 (E.D. Va. Dec. 18, 2018) ("Parties may not raise entirely new arguments for the first time in their objections to a magistrate judge's report.").

property, as recognized by state law or independent sources.  See Washlefske v. Winston, 234 F.3d 179, 183 (4th Cir. 2000) ("[I]n identifying a property interest so protected, we must look to 'existing rules or understandings that stem from an independent source such as state law.'") (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). In the absence of any elaboration, the court overrules the objection.

Fourth, plaintiffs argue that they may sue Nash and Knight in both their official and individual capacities.  As the court discussed earlier, the R&R determined that plaintiffs had sued defendants in their official capacities.  Plaintiffs disagree, stating that they had intended to allege violations by defendants in both their individual and official capacities.  Alternatively, they "request leave to add [Nash] and [Knight]" as defendants "in their . . . individual capacities."  ECF No. 48 at 27.  The court finds that the R&R did not err in deciding that defendants were sued in their official capacities as state officials or employees.  Plaintiffs do not specify whether the defendants are named in their official or individual capacities.  Where a plaintiff does not so specify, "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings." Harris v. Copeland, 2013 WL 4504764, at *5 (D.S.C. Aug. 22, 2013) (quoting Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir. 1995)).  Here, the amended complaint lists each defendant's position alongside his name in the case caption and, as the R&R noted, provides each defendant's government contact information.  Amend. Compl. at 1–2; R&R at 7, 10 n.5.  As for the nature of the plaintiffs' claims, the amended complaint largely alleges that defendants acted collectively and in accordance with their respective governmental entity's policies, further lending support to the R&R's conclusion.  See Amend. Compl. at 4 ("The defendants were complicit after Ray Nash left office by still

requiring Jonathan Green to remain in the registry . . . ."); ECF No. 8-2 at 4 ("Jonathan is now being told by SLED he is actually on a more private sex offender registry . . . ."). Accordingly, the court finds that the amended complaint, as pleaded, does not assert any claims against defendants in their individual capacities. As for plaintiffs' request, in the alternative, for leave to amend the complaint, such a motion is not properly before the court. The court will examine the merits of amending the complaint if or when such a motion is brought.[5]

Next, the court turns to the <u>Ex parte Young</u> exception. Under their fifth objection, plaintiffs argue that the <u>Ex parte Young</u> exception applies to all defendants—not just Keel, as the Magistrate Judge found. Again, the <u>Ex parte Young</u> exception is not implicated unless the plaintiff seeks prospective relief to remedy an ongoing violation of federal law. Here, Jonathan "seeks an immediate removal of [his] name from the sex offender registry and a letter of apology from the State of South Carolina, SLED, and the Dorchester [C]ounty Sheriffs [O]ffice." Amend. Compl. at 6. The Magistrate Judge found that plaintiffs failed "to set forth facts sufficient for the Court to infer that . . . Nash, Knight, Wilson, Kirkland, Whitsett, and Ahearn have the requisite authority to cure such violation." R&R at 10. However, the Magistrate Judge determined that Keel, as chief of SLED, is plausibly vested with the authority to remove Jonathan from the registry and declined to dismiss him as a defendant.

---

[5] Even if the court could construe plaintiffs' request in their objections as a motion for leave to amend, plaintiffs did not raise the request or make the attendant arguments in their prior briefs. As discussed earlier, litigants may not, for the first time in their objections, raise a ground not previously asserted when the matter was before the Magistrate Judge.

"The <u>Ex parte Young</u> exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" <u>McBurney</u>, 616 F.3d at 399 (citing <u>Ex parte Young</u>, 209 U.S. at 155–56) (alterations in original). In other words, "<u>Ex parte Young</u> authorizes suits only against officers with 'some connection with the enforcement of the act.'" <u>Doyle v. Hogan</u>, 1 F.4th 249, 254 (4th Cir. 2021) (quoting <u>Ex parte Young</u>, 209 U.S. at 157). Specifically, the plaintiff must show a "'special relation' between the officer being sued and the challenged statute before invoking the exception." <u>McBurney</u>, 616 F.3d at 399 (citing <u>Ex parte Young</u>, 209 U.S. at 157). "'[S]pecial relation' under <u>Ex parte Young</u> has served as a measure of <u>proximity to</u> and <u>responsibility for</u> the challenged state action. This requirement ensures that a federal injunction will be effective with respect to the underlying claim." <u>S.C. Wildlife Federation v. Limehouse</u>, 549 F.3d 324, 333 (4th Cir. 2008) (emphases in original).

Plaintiffs argue in their objections that each of the defendants meets the special relation requirement. First, plaintiffs argue that defendants possessed more than general authority to enforce the law. Specifically, they argue that Nash and Knight "create[d] their own policy" by adding and removing Jonathan from the public sex offender registry without keeping him apprised of his status. However, this argument fails to acknowledge that although the complaint alleges Nash and Knight were involved in the alleged wrongdoing, it does not allege that Nash and Knight possess the requisite authority to cure the violation. In response to that finding by the Magistrate Judge, plaintiffs dispute the notion that a proper <u>Ex parte Young</u> defendant in this case must possess "the

16

complete authority to remove Jonathan permanently and entirely from the sex offender registry." ECF No. 48 at 21. Plaintiffs explain that such a rule would fail to hold government officials "accountable for their illegal and unconstitutional actions." Id. Unfortunately for plaintiffs, their argument is unsupported by the law. Courts in this circuit have made clear that "the state officer being sued must have both the responsibility for the alleged ongoing violations of federal law and the authority to provide prospective redress for those alleged violations." Smith v. Demory, 2020 WL 1181310, at *2 (D.S.C. Mar. 12, 2020) (emphasis added); see also Allen v. Coll. of William & Mary, 245 F. Supp. 2d 777, 791 (E.D. Va. 2003) (noting that Ex parte Young relief may only be pursued against a state official who has the "authority to provide for . . . relief."). To only require an alleged constitutional violation—without requiring a showing of enforcement ability—would mean an injunction from the court would have "no effect whatsoever." Kobe v. Haley, 666 F. App'x 281, 300 (4th Cir. 2016). Plaintiffs then argue that even if enforceability were a requirement, defendants all possess the ability to remedy the harm. To support this claim, plaintiffs first note that Knight could remove Jonathan from the public sex offender registry because he and his predecessor—Nash—were able to do so in 2003 and again in 2015. However, plaintiffs ignore the Magistrate Judge's consideration of this very point; the Magistrate Judge noted that plaintiffs' request for injunctive relief seeks complete and permanent removal of Jonathan's name from the registry—including from the so-called private registry. Thus, even if the court were to infer from the complaint that Knight could remove Jonathan from the public registry because he had done so before, the complaint does not allege that Knight has the authority to provide the full and actual relief sought. Next, plaintiffs note

that they previously requested that Nash, Knight, Whitsett, and Ahearn write letters to a judge indicating their consent to removal of Jonathan from the registry. Plaintiffs appear to be suggesting that Knight, Whitsett, and Ahearn could issue the prospective relief if the court ordered them to write similar letters. But the contention that those defendants may, at best, write letters of consent so that another official may enforce removal from the registry illustrates that defendants are not, in fact, the ones capable of removing Jonathan from the registry. Therefore, the court overrules the objection and finds that Nash, Knight, Whitsett, and Ahearn are unable to provide the prospective relief sought.

Sixth, plaintiffs argue that Wilson and Kirkland should also remain as defendants in the lawsuit, and they further request leave to amend the complaint to add Governor Henry McMaster as a defendant. Plaintiffs argue that those individuals are or would be proper defendants under Ex parte Young because South Carolina's sex offender registry requirements are unconstitutional, and those defendants "are the chief legal officers and are in charge of enforcing the South Carolina Sex offender law." ECF No. 48 at 26. However, the amended complaint is devoid of allegations that Wilson and Kirkland, as the attorney general and assistant attorney general, respectively, possess the ability to enforce said law. Even if plaintiffs had presented such an allegation, courts have consistently found that state officials like the attorney general are not proper parties when they merely possess a general duty to uphold state laws, such as, in the case of the attorney general, a duty to issue advisory opinions. See McBurney, 616 F.3d at 400 (finding that the attorney general had no special relation to an allegedly unconstitutional statute where he had no specific enforcement authority under the statute and merely had a general authority to issue advisory opinions); Doyle v. Hogan, 1 F.4th 249, 255 (4th Cir.

2021) (rejecting the argument that the attorney general had enforcement authority in his "role as a legal advisory" and noting that the court "must still search for more than the '[g]eneral authority to enforce the laws of the state'") (quoting Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001)). Here, there is no allegation that the attorney general or members of his office have specific statutory authority to enforce the South Carolina Sex Offender Registry Act. Thus, Wilson and Kirkland are not proper Ex parte Young defendants.[6]

Seventh, plaintiffs argue that they have standing to sue defendants. However, defendants did not move to dismiss the complaint for a lack of standing to sue, nor did the Magistrate Judge find that plaintiffs lacked standing. Plaintiffs appear to be asserting standing in an attempt to ward off the finding that most defendants are immune from being sued and thus are not properly-named defendants in the § 1983 suit. But these are two different considerations. The standing doctrine "depends . . . on whether the plaintiff is the proper party to bring the suit." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 460 (4th Cir. 2005) (cleaned up); see Libertad v. Welch, 53 F.3d 428, 437 n.5 (1st Cir. 1995) ("An analysis of a plaintiff's standing focuses not on the claim itself, but on the party bringing the challenge . . . ."). On the other hand, whether sovereign immunity and Ex parte Young apply are defendant-focused inquiries. In other words, even if the court

---

[6] Like with defendants' requests for leave to amend the complaint to sue defendants in their individual capacities and to add Dorchester County as a defendant, the court finds that the request to add Governor McMaster as a defendant is unripe. Particularly with this claim, the court emphasizes that such a claim would likely be futile, for the same reasons discussed in relation to Wilson and Kirkland. See, e.g., Hutto v. S.C. Ret. Sys., 773 F.3d 536, 550 (4th Cir. 2014) ("[W]e have held that a governor cannot be enjoined by virtue of his general duty to enforce the law . . . ."); Doyle, 1 F.4th at 255 (declining the find that the Governor was a proper Ex parte Young defendant because he possessed only general enforcement authority).

assumed—without deciding—that plaintiffs met the three constitutional minimums of

standing, it remains true that they would have to show that their § 1983 claims are not

barred by sovereign immunity.  Accordingly, the court overrules this objection.[7]  Based

on the culmination of the findings above, the complaint does not set forth facts sufficient

for the court to infer that Nash, Knight, Whisett, Ahearn, Wilson, and Kirkland are proper

Ex parte Young defendants.  Defendants do not object to the Magistrate Judge's

conclusion that the complaint sufficiently alleges that Keel, as the current chief of SLED,

is a proper defendant, and the court finds no clear error in the same.  Accordingly, the

court overrules plaintiffs' objections and adopts the R&R in this respect, finding that

plaintiffs may proceed in seeking prospective relief against Keel.

　　　　Finally, plaintiffs argue that the court should grant plaintiffs leave to amend the

complaint to add Dorchester County as a defendant in this case.  According to plaintiffs,

they erroneously believed that a suit could not be brought against a nonperson entity like

Dorchester County and omitted Dorchester County as a defendant from its lawsuit.

Plaintiffs claim that now, after conducting further research, they realize they can bring a

§ 1983 claim against the county.  Relatedly, in arguing that Nash and Knight were "left to

adhere to their own local policies," plaintiffs indirectly argue that Dorchester County had

---

[7] Similarly, plaintiffs mistakenly intertwine their statute of limitations argument with the R&R's analysis of sovereign immunity.  Plaintiffs argue that their § 1983 claims are not time-barred under the statute of limitations because the court should find that Jonathan suffers "a fresh injury" each day he remains on the sex offender registry.  ECF No. 48 at 30.  However, the Magistrate Judge did not rule on defendants' statute of limitations argument within the context of plaintiffs' § 1983 claim except to observe that had plaintiffs sued defendants in their individual capacities, such claims would "likely" have failed due to the statute of limitations.  R&R at 10 n.5.  The R&R's footnote is not dispositive, and, like the Magistrate Judge, this court takes no firm position on whether plaintiffs' claims are so barred.

a custom or policy of improperly listing juveniles on the public sex offender registry. ECF No. 48 at 14.  In sum, plaintiffs' arguments may be fairly construed as a request for leave to assert a <u>Monell</u> claim against Dorchester County.  <u>See</u> <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 690 (1978) (describing suits against municipalities and other local government units under § 1983).  The court finds, however, that such a request is, once again, unripe.  Plaintiffs have not filed a motion to amend the complaint, and in the absence of such a motion, the court finds no cause to determine whether plaintiffs can bring a <u>Monell</u> claim against Dorchester County.  In sum, the court overrules each of plaintiffs' objections and dismisses the § 1983 claims, apart from plaintiffs' claim against Keel for prospective relief.

### B.  South Carolina FOIA

Next, the court turns to plaintiffs' FOIA claims.  In the amended complaint, plaintiffs allege that the SLED defendants denied Jonathan and Nathaniel's two "separate freedom of information requests" that sought information about "what they [we]re publishing on the sex offender registry."  Amend. Compl. ¶ 5.  According to documents attached to the amended complaint, the requests were denied on December 10, 2019, and July 10, 2020, respectively.  ECF No. 8-2 at 12, 15.  Although plaintiffs did not specify, the Magistrate Judge construed the FOIA cause of action as strictly claiming a violation of the South Carolina Freedom of Information Act ("SCFOIA") because "SLED is not subject to federal FOIA laws."  R&R at 11 (citing 5 U.S.C. § 551(1)) (other citations omitted); <u>see also</u> <u>Sheppard v. Stewart</u>, 2009 WL 4432575, at *3 (D.S.C. Nov. 24, 2009).  Plaintiffs do not object to this finding, and the court reaches the same conclusion.  The Magistrate Judge ultimately recommended that the court grant in part and deny in part the

motion to dismiss the SCFOIA claims. Specifically, the Magistrate Judge found that any claims related to 2019 request were barred by the statute of limitations. However, the Magistrate Judge found that the complaint plausibly alleges a wrongful failure to disclose information related to the 2020 request because it would be premature to decide whether SLED's basis for denying the complaint was proper.

Plaintiffs do not object to the Magistrate Judge's recommendation regarding the 2019 request. After reviewing the record in this case and the applicable law, the court finds no clear error in the R&R's finding, although the court notes that it need not reach a definitive ruling given its finding below that all FOIA claims should be dismissed. As for the claims related to the 2020 request, the SLED defendants object to the Magistrate Judge's recommendation, arguing that SLED "should be substituted in their place as the sole party defendant for the FOIA claim pursuant to S.C. Code Ann. § 15-78-70(c)." ECF No. 46 at 2. Plaintiffs do not object to defendants' request to replace the SLED defendants with SLED; however, upon review, the court finds it need not determine whether such a substitution would be proper because neither the SLED defendants nor SLED itself are proper defendants in this federal court action.

The SLED defendants argue that the South Carolina Tort Claims Act ("SCTCA") governs plaintiffs' SCFOIA cause of action because the SCTCA "is the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents." Wells v. City of Lynchburg, 501 S.E.2d 746, 749 (S.C. Ct. App. 1998). The SLED defendants then argue that under the SCTCA, plaintiffs should have named the governmental entity—in this case, SLED—instead of its employees because "[a]n employee of a governmental entity who commits a tort while acting within the scope of

his official duty is not liable and the plaintiff must sue the governmental agency itself."
Newkirk v. Enzor, 240 F. Supp. 3d 426, 436 (D.S.C. 2017); S.C. Code § 15-78-70(a).  As
such, the SCTCA provides that [i]n the event that the employee is individually named,
the agency or political subdivision for which the employee was acting must be substituted
as the party defendant."  S.C. Code § 15-78-70(c).

Based on the court's review of the relevant law, it is unclear whether plaintiffs'
FOIA claims are properly considered as being brought under the SCTCA.  The SCFOIA
is separately codified at S.C. Code § 30-4-10 et seq., and the court has not identified any
authorities that categorize FOIA claims as "torts" in South Carolina.  In any event, the
court need not resolve the issue because the doctrine of sovereign immunity shields state
actors from suit, and under both the SCFOIA and the SCTCA, the State of South
Carolina did not waive that immunity as it relates to suits brought in federal court.

As discussed earlier, the doctrine of sovereign immunity generally shields state
actors from suit.  Sovereign immunity is not absolute, however, and a state may waive its
claim to immunity through statute.  Between the two, the SCFOIA presents the clearer
case that South Carolina did not waive its immunity for suits brought in federal court.
The SCFOIA expressly provides that "[a] citizen of the State may apply to the circuit
court for a declaratory judgment, injunctive relief, or both, to enforce the provisions of
this chapter in appropriate cases if the application is made no later than one year after the
date of the alleged violation."  S.C. Code § 30-4-100(A).  The SCFOIA designation of
state circuit courts as the proper tribunals for such suits constitutes clear evidence that the
State does not consent to actions brought in federal court pursuant to the chapter.

On the other hand, under the SCTCA, South Carolina "waives sovereign immunity for torts committed by the State, its political subdivisions, and governmental employees acting within the scope of their official duties." Proctor v. Dep't of Health & Env't Control, 628 S.E.2d 496, 502 (S.C. Ct. App. 2006); see also S.C. Code § 15-78-40. However, the SCTCA explicitly retains immunity with respect to claims filed in federal court. S.C. Code § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."). In other words, the SCTCA constitutes a waiver of the state's sovereign immunity with respect to claims made in state court but not with respect to claims had in federal court. See Doe v. Coastal Carolina Univ., 359 F. Supp. 3d 367, 379 (D.S.C. 2019) ("South Carolina has not waived its Eleventh Amendment immunity for lawsuits in federal court, consenting to suit only in South Carolina state court to the extent that it has waived tort claims against it."). The amended complaint seeks monetary damages to rectify the alleged FOIA violations, but even if plaintiffs had sought prospective injunctive relief, the court's conclusion would be the same. See Seminole Tribe, 517 U.S. at 58 ("[T]he relief sought by plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."). Furthermore, the fact that plaintiffs have a pending federal § 1983 action against Keel does not change the outcome because "pendent jurisdiction does not permit . . . an evasion of the immunity guaranteed by the Eleventh Amendment." Pennhurst, 465 U.S. at 121.

As such, plaintiffs' state law FOIA claim against the SLED defendants, in their official capacities, must fail. That claim must instead be brought in state court, if at all.

Remand is improper because the case was not removed from state court.  See Pechilis v. S.C. Auctioneers' Comm'n, 1993 WL 733081, at *5 (D.S.C. Jan. 25, 1993) (dismissing the plaintiff's pendant state law claims, including a claim arising under the SCFOIA, because remand would be inappropriate).  Therefore, the proper recourse is to dismiss the cause of action without prejudice.  See id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988)).  Although this may result in bifurcation of plaintiffs' claims, the Supreme Court has explained that such a result "is not uncommon in this area" as "unclear issues of state law commonly are split off and referred to the state courts" and, in any event, policy considerations "cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State."  Pennhurst, 465 U.S. at 122–23.  In sum, the court departs from the R&R in this respect and dismisses plaintiffs' FOIA claim against Keel, Whitsett, and Ahearn in its entirety and without prejudice.  This action will proceed solely as a § 1983 claim against Keel, in his official capacity.

## IV.  CONCLUSION

For the foregoing reasons, the court partially adopts and partially departs from the R&R and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 5, 2022**
**Charleston, South Carolina**