**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| JONATHAN GREEN and JGCRE, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 2:21-cv-01304-DCN-MGB |
| ) | |
| DORCHESTER COUNTY; RAY NASH, ) | **ORDER** |
| *Former Dorchester County Sheriff*; ) | |
| LUTHER CARL KNIGHT, *Current* ) | |
| *Dorchester County Sheriff*; and MARK ) | |
| KEEL, *South Carolina Law Enforcement* ) | |
| *Division*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 97, that the court grant in part and deny in part defendants Dorchester County, Ray Nash ("Nash"), Luther Carl Knight ("Knight"), and Mark Keel's ("Keel") (collectively, "defendants") motion to dismiss, ECF No. 90, and deny plaintiffs Jonathan Green ("Green") and JGCRE, Inc.'s ("JGCRE") (together, "plaintiffs") motion for preliminary injunction, ECF No. 87. For the reasons set forth below, the court adopts the R&R, dismisses all claims against defendants except for plaintiffs' claim for injunctive relief against Keel, and denies the motion for preliminary injunction.

## I. BACKGROUND

The R&R ably recites the facts, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they

1

appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

In 1998, Green was adjudicated as "delinquent" for three sex offenses in Fairfax County juvenile court in Virginia. Jonathan was fifteen years old at the time, and he was sentenced to thirty days in juvenile detention, mandatory counseling, and probation. In 2000, Jonathan and his family moved to Dorchester County, South Carolina. When they arrived, the Dorchester County Sheriff's Office informed Jonathan that he was required to register as a sex offender or face potential criminal charges and imprisonment. Green was subsequently placed on the South Carolina sex offender registry.

In 2015, Green's father, who was a Dorchester County deputy sheriff, asked Knight, who was the Dorchester County Sheriff at the time, to remove Green from the sex-offender registry. Knight responded that Green was no longer on the registry website, and in 2016, Green determined that his arrest and registry information were no longer identifiable through background checks. But in 2019, Green allegedly discovered that although he had been removed from the public registry website, "he was still on a 'different registry,'" which had the same effect as being on the national sex offender database. ECF No. 84, 2d Amend. Compl. ¶ 28. The complaint alleges that Jonathan has suffered various injuries throughout his adult life because of his placement on the sex-offender registry. Such alleged injuries include, inter alia, claims that (1) Green suffers from "[c]onstant shame and debilitation" and inability to travel, and (2) plaintiff JGCRE, Inc., a commercial real estate company founded by Jonathan, has been unable to conduct business. Id. ¶¶ 29–30.

On May 3, 2021, Green, JGCRE, and Green's father[1] initiated this action. ECF No. 1. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Baker. On August 5, 2022, the court entered an order adopting in part and departing in part from an R&R on defendants' first motion to dismiss, wherein the court dismissed all claims except for a § 1983 claim against Keel seeking prospective relief. ECF No. 70. With defendants' consent, plaintiffs filed a second amended complaint on October 17, 2022. 2d Amend. Compl. In the second amended complaint, now the operative complaint, plaintiffs asserted new claims against Dorchester County, Knight, Nash, and Keel.[2] Id.

On November 11, 2022, plaintiffs filed a motion for a preliminary injunction. ECF No. 87. Defendants responded in opposition on November 28, 2022, ECF No. 89, and plaintiffs replied on December 5, 2022, ECF No. 91.

On November 28, 2022, defendants filed a motion to dismiss the second amended complaint. ECF No. 90. Plaintiffs responded in opposition on December 12, 2022, ECF No. 92, and defendants replied on December 19, 2022, ECF No. 94. On January 18, 2023, Magistrate Judge Baker issued the R&R, recommending the court grant in part and

---

[1] Green's mother was substituted as a party in the father's place, but she was later omitted from the plaintiffs' amended complaint, ECF No. 80-1. As such, Green and JGCRE are the remaining plaintiffs.

[2] Green brings the following causes of action: (1) violation of Green's Fourteenth Amendment substantive due process, (2) violation of Green's Fourteenth Amendment procedural due process, (3) violation of the Fourth Amendment's Equal Protection Clause; (4) violation of the Fifth Amendment's Takings Clause, (5) violation of Green's Fourth Amendment right to be free from unreasonable search and seizure, (6) violation of Green's Eighth Amendment right to be free from cruel and unusual punishment, (7) violation of double jeopardy, and (8) violation of Green's right to privacy, all pursuant to 42 U.S.C. § 1983.

deny in part the motion to dismiss and deny the motion for preliminary injunction. ECF No. 97 ("R&R"). In the same order, the magistrate judge denied plaintiffs' third motion to amend, ECF No. 93. ECF No. 97. On February 1, 2023, plaintiffs filed their objections to the R&R. ECF No. 98. Defendants did not file objections but responded to plaintiffs' objections on February 15, 2023. ECF No. 100. As such, the motions are now ripe for the court's review.

## II. STANDARD

### A. Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

### B. Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 558

4

F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### C. Preliminary Injunction

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." United States v. South Carolina, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). A party seeking a preliminary

injunction must demonstrate that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest.  Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc., 722 F.3d 591, 595 (4th Cir. 2013) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  "To obtain a preliminary injunction under the Winter test, a movant must make a 'clear showing' of [the] four requirements."  Alkebulanyahh v. Nettles, 2011 WL 2728453, at *3 (D.S.C. July 13, 2011); see also Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011) ("Winter thus requires that a party seeking a preliminary injunction . . . must clearly show that it is likely to succeed on the merits.") (internal quotation marks omitted).  As the Supreme Court has noted, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter, 555 U.S. at 22.

### III.   DISCUSSION

Plaintiffs objected to the magistrate judge's rulings on the motion for preliminary injunction, motion to dismiss, and motion to amend.  The motion to amend, however, was fully resolved by the magistrate judge's order.  28 U.S.C. § 636(b)(1)(A) allows "a magistrate judge to hear and determine any pretrial matter pending before the court" except, inter alia, a motion for injunctive relief or motion to dismiss for failure to state a claim.  Accordingly, while the magistrate judge provided "proposed findings of fact and recommendations" for the disposition of the motion to dismiss and motion for preliminary injunction, 28 U.S.C. § 636(b)(1)(B), its ruling on the motion to amend is

final.  Therefore, only the motion to dismiss and the motion for preliminary injunction are before the court, and the court considers those motions in turn.

### A.  Motion to Dismiss

Defendants moved to dismiss the second amended complaint on six independent and alternative bases: (1) plaintiffs failed to allege defendants' personal participation in the violation of a constitutional right, (2) plaintiffs raised their claims after South Carolina's statute of limitations for personal injury actions had run, (3) Dorchester County is not a proper party to the lawsuit, (4) the individual defendants are entitled to qualified immunity, (5) the individual defendants are not proper parties under 42 U.S.C. § 1983, and (6) the Eleventh Amendment bars suits against the individual defendants.

The magistrate judge dismissed defendants' first argument, noting that "personal participation is not a necessary condition" for granting injunctive relief against state officers being sued in their official capacity.  R&R at 23 n.5 (quoting Doe v. Citadel, 2022 WL 2806473, at *4 (D.S.C. July 18, 2022)); but see Doyle v. Hogan, 1 F.4th 249, 254 (4th Cir. 2021) (noting that Ex parte Young only authorizes suits against officers who have some connection with enforcement of the act at issue).  The magistrate judge also dismissed defendants' fifth argument.  Although suits against state officials in their official capacities are effectively suits against the official's office itself, § 1983 allows federal courts to enjoin state officials sued in their official capacities.  R&R at 20 (citing Ex parte Young, 209 U.S. 123, 155–56 (1908)).  Neither party objects to the magistrate judge's recommendations on defendants' first and fifth arguments, so the court need only review those recommendation for clear error.  Diamond, 416 F.3d at 315.  Finding none,

the court declines to address defendants' first and fifth arguments and proceeds to address the remaining arguments.

As explained in this order, the court ultimately concludes that (1) plaintiffs' claims for monetary damages arising out of Green's initial placement on the registry are barred by the statute of limitations, (2) plaintiffs have not adequately alleged a Monell claim against Dorchester County, (3) the individual defendants are entitled to qualified immunity, and (4) the issue of whether the individual defendants are immunized against suits for monetary damages is mooted, but the Eleventh Amendment does not immunize Keel against claims for injunctive relief.

### 1. Statute of Limitations

Defendants argued that all claims in this case were brought after the applicable statute of limitations had already run. Neither party disputes that South Carolina's three-year limitation for personal injury actions applies to plaintiffs' § 1983 claims. See ECF No. 90-1 at 5 ("[T]he statute of limitations for § 1983 claims arising in South Carolina is three years . . . .") (internal quotation marks and citation omitted); ECF No. 92 (applying South Carolina's discovery rule for determining when the statute of limitations begins to run); see also Wilson v. Garcia, 471 U.S. 261, 275 (1985) (holding that a state's statute of limitations is "the one most appropriate . . . for all § 1983 claims").

Although they do not dispute the three-year limitations period, plaintiffs contend that (1) Green did not discover that he remained on the registry until 2019, and (2) Green is suffering a continuing violation of his constitutional rights, meaning the statute of limitations does not apply. On the first point, the magistrate judge noted that most of the allegations in the second amended complaint relate to violations of Green's constitutional

rights that occurred when he was first placed on the registry in 2000. R&R at 12–13. Therefore, those claims could have been brought as soon as "Green was first required to register as a sex offender upon moving to South Carolina"; in other words, it would not have taken until 2019 for Green to be on notice that he had potential claims against defendants for placing him on the registry. Id.

Plaintiffs do not meaningfully dispute that conclusion, and they instead focus on their second argument. Plaintiffs previously argued in their response that the statute of limitations did not apply because the "continuing violation doctrine" allowed them "to sue on an otherwise time-barred claim." ECF No. 82 at 2 (quoting Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006)). The magistrate judge agreed that the doctrine could theoretically allow plaintiffs to bring otherwise time-barred claims. See R&R at 13 ("[T]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.") (quoting Va. Hosp. Ass'n v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989)). Nevertheless, the magistrate judge determined that the doctrine did not save all of plaintiffs' claims. The magistrate judge explained that while claims challenging the constitutionality of South Carolina law plausibly involved ongoing violations, claims arising from Green's initial placement on the registry were not ongoing and remained barred by the statute of limitations.

In their objections, plaintiffs disagree that the statute of limitations bars most of their claims. In support, they cite Grabarcyzk v. Stein, 2019 WL 4235356 (E.D.N.C. Sept. 4, 2019), for the proposition that a plaintiff adequately asserts there is continuing harm where he alleges that due process was never afforded, even if that alleged deprivation occurred outside the statute of limitations. ECF No. 98 at 6. Based on how

9

the court reads the R&R, that principle of law is misapplied here.  The R&R found that plaintiffs seek <u>monetary</u> damages for claims arising from Green's initial placement on the registry and seek injunctive relief for their constitutional claims.  R&R at 13–14 (citing <u>Nat'l Ass'n for Rational Sexual Offense L. v. Stein</u>, 2019 WL 3429120, at *9 (M.D.N.C. July 30, 2019)).  This reading is consistent with the law.  Indeed, another district court in the Western District of North Carolina interpreted <u>Grabarcyzk</u> to mean that the continuing violation doctrine only applied there because the plaintiff in <u>Grabarcyzk</u> "was requesting [] <u>removal</u> from the sex offender registry"—<u>i.e.</u>, injunctive relief.[3]  <u>Godbold ex rel. Holloway v. Cherokee Cnty.</u>, 2021 WL 1178060, at *2 (W.D.N.C. Mar. 29, 2021) (emphasis in original).  Conversely, the court determined that a request for monetary damages would not by definition involve a "specific cessation of harm" for purposes of the continuing harm doctrine.  <u>Id.</u>

Moreover, as the Fourth Circuit has explained, "continual unlawful acts are distinguishable from the continuing ill effects of an original violation."  <u>A Soc'y Without A Name v. Virginia</u>, 655 F.3d 342, 348 (4th Cir. 2011).  Based on that principle, a due process claim is not a continuing violation unless it "is occasioned by continual unlawful acts, not [just] continual ill effects."  <u>Miller v. King George Cnty.</u>, 2007 WL 983931, at *4 (E.D. Va. Mar. 27, 2007); <u>see also</u> <u>Ocean Acres Ltd. P'ship v. Dare Cnty. Bd. of Health</u>, 707 F.2d 103, 107 (4th Cir. 1983) ("[A] 'continuing wrong' theory should not provide a means of relieving [a] plaintiff from its duty of reasonable diligence in pursuing

---

[3] The court also noted that in <u>Grabarcyzk</u>, the plaintiff was seeking injunctive relief because he "was still on the sex offender registry."  <u>Godbold</u>, 2021 WL 1178060, at *2.  As the court notes later in this order, SLED has removed Green from the South Carolina sex offender registry, similarly distinguishing this case from <u>Grabarcyzk</u>.

its claims."). The R&R properly found that although plaintiffs alleged that there were continuing ill effects, the complaint fails to allege any continuing unlawful acts. As such, the court reads the R&R as harmonious, rather than incongruous, with the caselaw cited by defendants. Plaintiffs' claims seeking monetary damages stemming from the initial placement on the registry are barred by the statute of limitations. The court considers defendants' claim for injunctive relief later in this order, infra § III.A.4, ultimately finding that the claim may proceed.

### 2. Dorchester County

Next, defendants argued that Dorchester County is not a proper party to this lawsuit because (1) Dorchester County's organizational policies dictate separation between the county seat and its elected officials, and (2) sheriffs are employees of the state, not the county. ECF No. 90-1 at 6. In response, plaintiffs argued that (1) Dorchester County had a custom of "having laym[e]n" in the Sheriff's Office interpret laws like the one that resulted in Green's placement on the registry, and (2) it should have allocated funds to ensure due process violations did not occur.

Although the issue was somewhat unclear from the parties' briefs, the R&R homed in on the arguments, correcting observing that at issue was whether plaintiffs had properly asserted a Monell claim against Dorchester County. Under Monell, municipalities and other local government units may be held liable via § 1983. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978). Importantly, however, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691 (emphasis in original); see Connick v. Thompson, 563 U.S. 51, 60

11

(2011) (holding that local governments "are not vicariously liable under § 1983 for their employees' actions"). Thus, a plaintiff who seeks to assert a § 1983 claim against a municipality or county is obligated "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 694).

Plaintiffs essentially relied on a theory of respondeat superior to tie Dorchester County to the conduct of the sheriffs who allegedly placed Green on the registry and refused to remove him. In their response, plaintiffs emphasized that Dorchester County either did not exercise or should have exercised control over the Dorchester County Sheriff's Office. ECF No. 92 at 3. This argument is akin to a claim that Dorchester County employs tortfeasors and should be held liable itself, and the magistrate judge was correct to reject the argument.

In their objections, plaintiffs attempt to shift gears by arguing, for the first time, that a Monell claim may be asserted even where there is "a single decision by municipal policymakers under appropriate circumstances." ECF No. 98 at 8 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)) (emphasis added). As a preliminary matter, this argument was not raised in plaintiffs' original response and is thus untimely. See Addison v. CMH Homes, Inc., 47 F. Supp. 3d 404, 412 (D.S.C. 2014) (stating that the court has no obligation to consider new arguments a party raises for the first time in her objections to an R&R). Moreover, plaintiffs fail to expound on whether those "appropriate circumstances" are presented here, and upon further review, no such circumstances exist. To show that a municipality had a policy or custom that caused injury, the plaintiff must allege that the policy or custom arose in one of four ways:

12

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 533 (4th Cir. 2022) (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)) (alteration in original and other citations omitted).

Here, plaintiffs fail to allege a policy or custom that manifested in one of those four ways. At best, the argument in plaintiffs' objections appears to hew most closely to the second form of policymaking, in which a person with "final policymaking authority" effectively creates a policy or custom that caused the injury. See ECF No. 98 at 8. Plaintiffs argue that in Dorchester County, a sheriff "has policymaking authority for a county" when it comes to determining who goes on the sex offender registry. Id. at 8–9. In support, they claim that individual sheriffs are the ones who send registration information to the South Carolina Law Enforcement Division ("SLED")—suggesting that the discretion they wield allows them to effectively make policymaking decisions. Id. at 9. But in the same breath, plaintiffs necessarily acknowledge that SLED "is charged with 'promulgating regulations to implement' . . . the sex offender registry and therefore "maintains the registry." Id. (citing S.C. Code § 23-3-420). That admission is self-defeating. Municipal officials with "final policymaking authority" must "have the responsibility and authority to implement final municipal policy with respect to a particular course of action." Riddick v. Sch. Bd. of the City of Portsmouth, 238 F.3d 518, 522–23 (4th Cir. 2000) (citations omitted). Moreover, the "official policy" of a municipality must "refer[] to formal rules or understandings—often but not always

13

committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986). If anything, plaintiffs' argument suggests SLED is the one with final policymaking authority, but SLED's maintenance of the registry is not the subject of a § 1983 claim here.

In short, even if the court were to find that Dorchester County exercises control over its sheriffs, plaintiffs have failed to allege that Dorchester County could be held liable for the sheriffs' actions under Monell. Therefore, the court dismisses the claims against Dorchester County on this basis.

### 3. Qualified Immunity

In their motion to dismiss, defendants argued that the suits against the individual defendants in their individual capacities should be dismissed due to qualified immunity. The magistrate judge determined that Keel, Nash, and Knight were entitled to qualified immunity because defendants had proven that placing Green on the registry did not violate any clearly-established constitutional rights. R&R at 26–27. Plaintiffs do not object to the magistrate judge's finding on qualified immunity. ECF No. 98 at 19 n.5 ("Plaintiffs have elected to not object to the R&R's findings regarding qualified immunity."). Since the court finds that the R&R's analysis on qualified immunity was not clearly erroneous, the court adopts the R&R in this respect and grants the motion to dismiss the claims against the individual defendants in their individual capacities.

### 4. Sovereign Immunity

Finally, defendants moved to dismiss the claims against the individual defendants—Nash, Knight, and Keel, in their official capacities—based on sovereign

14

immunity. In response, plaintiffs argued that they were entitled to seek (1) monetary damages against Nash and Knight, and (2) injunctive relief against Keel.

First, plaintiffs argued that suits for monetary damages against Nash and Knight were proper because the two sheriffs should not be considered "arms of the state" and are thus not immunized by the Eleventh Amendment. ECF No. 92 at 6. Since the court dismissed all claims for monetary damages as barred by the statute of limitations, however, it need not consider whether Nash and Knight are immune to suits for monetary damages. Therefore, the court dismisses the claims against Nash and Knight for monetary damages without ruling on whether the sheriffs are arms of the state for purposes of the Eleventh Amendment.

That leaves plaintiffs' claims for injunctive relief against the Keel. In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity for state officers "which permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010). "The Ex parte Young exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" Id. (citing Ex parte Young, 209 U.S. at 155–56) (alterations in original). In other words, "Ex parte Young authorizes suits only against officers with 'some connection with the enforcement of the act.'" Doyle v. Hogan, 1 F.4th 249, 254 (4th Cir. 2021) (quoting Ex parte Young, 209 U.S. at 157). Specifically, the plaintiff must show a "'special relation' between the officer being sued and the challenged statute before invoking the

15

exception." McBurney, 616 F.3d at 399 (citing Ex parte Young, 209 U.S. at 157). "'[S]pecial relation' under Ex parte Young has served as a measure of proximity to and responsibility for the challenged state action. This requirement ensures that a federal injunction will be effective with respect to the underlying claim." S.C. Wildlife Federation v. Limehouse, 549 F.3d 324, 333 (4th Cir. 2008) (emphases in original).

In the court's order on defendants' first motion to dismiss, the court allowed an Ex parte Young claim against Keel to proceed because the court determined that Keel, as the chief of SLED, plausibly wielded the authority to remove Green from the registry if ordered to do so and thus had a special relationship with the challenged statute. ECF No. 70 at 15. In the instant motion, defendants again contend that Ex parte Young does not apply. They argue that even though the court previously denied a motion to dismiss an Ex parte Young claim against Keel, "the law regarding sex offenders has changed" and warrants a different result. ECF No. 90-1 at 13. Specifically, defendants claim that under the "original law," Green could not apply for removal from the registry, but under the "new law," he now has "the ability to apply for removal." Id. They conclude that since Green "has an adequate remedy at law," injunctive relief would not be proper. Id. (citing Ass'n of Am. Publishers, Inc. v. Frosh, 2022 WL 2116857, at *3 (D. Md. June 13, 2022)).

Plaintiffs raised several disagreements. First, they argued, applying for removal would cause Green to commit perjury because the application requires an applicant to swear that he was originally required to register because of a conviction. Second, even if Green could apply for removal, the process would not grant complete relief to Green.

ECF No. 92 at 9.  Third, applying for removal would force Green to accede that he was lawfully placed on the registry—a premise that he still fundamentally disputes.  Id. at 10.

The magistrate judge recommended that the court allow the Ex parte Young claim against Keel to proceed.  The magistrate judge reasoned that at the motion to dismiss stage, the only inquiry should be whether the complaint alleges an ongoing violation of federal law and names a defendant who can provide prospective relief.  R&R at 23 (citing Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 636 (2002)).  Accordingly, the magistrate judge deemed it unnecessary to consider whether the removal procedure provided an alternative remedy at law during this relatively early stage of litigation.[4]

On May 4, 2023, after the magistrate judge issued the R&R, SLED wrote a letter to Green stating that SLED had approved Green's request to be removed from the sex offender registry.  The letter further stated that the decision did not have any effect on Green's obligations to report or register himself in other states.  Based on SLED's decision, the parties tentatively expressed optimism that they would be able to resolve the injunctive relief claims.  Eventually, however, the parties indicated that they were unable to agree on what steps would be sufficient to resolve plaintiffs' remaining concerns.  At a status conference, the court instructed plaintiffs to prepare a list of outstanding requests and for defendants to formally respond with whether they could (or would) address each item.  ECF No. 108.  The content of the letters is deemed confidential, so the court simply notes the outcome generally.  Defendants ultimately refused plaintiffs' request

---

[4] Defendants did not file objections to the R&R and therefore did not object to the recommendation that the court deny the motion to dismiss the injunctive relief claim against Keel.

that SLED destroy all internal records related to Green. Defendants claimed retaining the files would be the only way to ensure SLED could communicate accurate information to other law enforcement entities and avoid future complications for Green. Plaintiffs appear to take issue with the fact that other law enforcement entities and third parties (such as background check companies) may still be able to see that Green was previously required to register for a sex offense.

Since the parties were unable to fully agree on the proper injunctive relief, the court cannot force a result upon the parties. As the magistrate judge noted, "the inquiry into whether suit lies under Ex parte Young does not include an analysis of the merits of the claim." R&R at 23 (quoting Verizon Md., 535 U.S. at 636); see also Indus. Servs. Grp., Inc. v. Dobson, 68 F.4th 155, 164 (4th Cir. 2023) ("[T]o qualify for the [Ex parte Young] exception, [the plaintiff] need not prove that Defendants' alleged . . . actions are an ongoing or continuing violation of the [act]. Rather, it is sufficient that [the] Complaint merely alleges the ongoing behavior.") (emphases in original). Here, the court cannot determine at this stage whether failing to destroy Green's files is an ongoing constitutional violation. At this stage of litigation, the court can only determine whether the amended complaint makes that allegation, and it does. See 2d Amend. Compl. at prayer.[5]

### B. Motion for Preliminary Injunction

Finally, the court turns to plaintiffs' motion for preliminary injunction. Plaintiffs moved for an injunction to "remove [] Jonathan Green from the South Carolina Sex

---

[5] While the court cannot now resolve the issue on the merits, the court cautions that even if Green is ultimately successful, any injunctive relief the court orders would only apply to SLED (via Keel) and would not necessarily reach other non-state actors.

Offender Registry ("SOR")" and requested the destruction of Green's "fingerprint and photographic records." ECF No. 87 at 1. In essence, plaintiffs request preliminary enforcement of the injunctive relief that they are suing for.

A party seeking a preliminary injunction must make a clear showing of the four Winter factors: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest. Metro. Reg'l, 722 F.3d at 595 (citing Winter, 555 U.S. at 20). Although the magistrate judge recommended denying defendants' motion to dismiss the claim for injunctive relief against Keel, the magistrate judge recommended denying plaintiffs' motion for preliminary injunction. The recommendation turned on the second Winter factor: whether plaintiffs were likely to suffer irreparable harm. Even though the magistrate judge did not find defendants' argument about the alternative avenue of removal-by-application relevant to the motion to dismiss, the magistrate judge deemed that information relevant for finding that plaintiffs were unlikely to suffer irreparable harm. R&R at 29–31.

In their objections, plaintiffs again disagreed that the application process provides another option for Green to have his name removed from the registry. ECF No. 98 at 18. The court finds that the argument is now moot. SLED affirmed that Green has been removed from the sex offender registry. To be sure, plaintiffs claim that Green has not been fully removed from the list and that SLED should still be ordered to destroy files related to Green. For purposes of this motion, however, the court finds that following the removal, Green will not suffer the ongoing irreparable harm he claimed in his motion. The crux of plaintiffs' argument about irreparable harm was that Green and his company

19

were suffering from shame and stigma from Green's placement on the registry. ECF No. 87 at 21. SLED indicated that Green's name and identifying information were removed from South Carolina's sex offender registry. SLED's action thus appears to resolve Green's chief concern. Indeed, plaintiffs' objections to the magistrate judge's recommendation on the preliminary injunction were singularly focused on arguing why Green would not be able to apply for removal, ECF No. 98 at 17–18; and yet, SLED approved a request for Green's removal. In light of that outcome, the court agrees with the magistrate judge that failing to grant preliminary injunctive relief would not result in irreparable harm.

## IV. CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R, **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss, and **DENIES** the motion for preliminary injunction.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 21, 2023**
**Charleston, South Carolina**