**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Jonathan Green and JGCRE, Inc., | ) | |
| | ) | Case No. 2:21-cv-01304-DCN-MGB |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Mark Keel, *South Carolina Law Enforcement Division*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiffs Jonathan Green and JGCRE, Inc. ("Plaintiffs")[1], originally proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983 and the South Carolina Freedom of Information Act on May 3, 2021. (Dkt. No. 1.) Plaintiffs alleged that the defendants[2] violated Plaintiff Jonathan Green's constitutional rights by placing him on the South Carolina sex offender registry as a juvenile, and by refusing to remove him from that registry. (*See generally* Dkt. Nos. 1, 8, 8-2.) Plaintiffs further alleged that the defendants violated the South Carolina Freedom of Information Act by denying requests for information from Plaintiff Jonathan Green and his father, Nathaniel Green. (*See generally* Dkt. Nos. 1, 8, 8-2.)

Currently before the Court is a Motion for Summary Judgment (Dkt. No. 144) filed by Defendant Mark Keel ("Defendant"). Under Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge. For

---

[1] Nathaniel Green and Mildred Green were also named plaintiffs in the instant civil action but have since been dismissed. (Dkt. Nos. 1, 8, 29, 30, 74.)

[2] Plaintiffs also named several other defendants in this case, including: the Dorchester County Sheriff's Office; Dorchester County, South Carolina; the South Carolina Law Enforcement Division; Ray Nash, the former Dorchester County Sheriff; Luther Carl Knight, the current Dorchester County Sheriff; Alan McCrory Wilson, Attorney General of South Carolina; Harley Littleton Kirkland, Assistant Attorney General of South Carolina; Adam L. Whitsett with the South Carolina Law Enforcement Division; and Paul Thomas Ahearn, III with the South Carolina Law Enforcement Division. (Dkt. Nos. 1, 8, 84.) All of these parties have since been terminated as defendants. (Dkt. Nos. 10, 73, 109.) Defendant Mark Keel is the only remaining defendant in this civil action.

the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Dkt. No. 144) be **GRANTED**, and that Plaintiffs' case be dismissed in full.

## PROCEDURAL HISTORY

As noted, Plaintiffs initially filed this litigation while proceeding *pro se*. (Dkt. No. 1.) After receiving a Proper Form Order from the Court, Plaintiffs filed an Amended Complaint. (Dkt. No. 8.) On October 7, 2021, the named defendants filed a Motion to Dismiss for Plaintiffs' Failure to State a Claim. (Dkt. No. 19.) Plaintiffs responded to the motion on November 5, 2021. (Dkt. No. 34.) On December 17, 2021, the undersigned recommended that the motion be granted in part and denied in part. (Dkt. No. 44.) More specifically, the undersigned recommended that the motion be denied as to: (1) Plaintiffs' § 1983 claim for injunctive relief against Defendant, and (2) certain of Plaintiffs' South Carolina Freedom of Information Act claims against employees of the South Carolina Law Enforcement Division ("SLED"). (*Id.* at 13–14.) The undersigned recommended that the motion be granted as to all remaining claims. (*Id.* at 14.)

On January 14, 2022, Plaintiffs retained counsel. (Dkt. No. 51.) In light of Plaintiffs' new representation, Plaintiffs were given an extended period to file objections to the undersigned's Report and Recommendation. (Dkt. No. 59.) On August 5, 2022, the Court adopted the Report and Recommendation in part, finding that the case should proceed solely as a § 1983 claim for injunctive relief against Defendant, in his official capacity. (Dkt. No. 70.)

On October 4, 2022, Plaintiffs filed a Motion to Amend their Amended Complaint, to which Defendant consented. (Dkt. Nos. 80, 81.) The undersigned granted Plaintiffs' motion on October 12, 2022, and Plaintiffs filed a Second Amended Complaint on October 17, 2022. (Dkt. No. 82.) The Second Amended Complaint named Dorchester County, Ray Nash, Luther Carl Knight, and Mark Keel as defendants and brought causes of action pursuant to § 1983, including:

(1) violation of Plaintiffs' substantive due process rights under the Fourteenth Amendment; (2) violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment; (3) violation of Plaintiffs' right to equal protection under the Fourteenth Amendment; (4) violation of the Fifth Amendment Takings Clause; (5) violation of Plaintiffs' Fourteenth Amendment right to be free from unreasonable searches and seizures; (6) violation of Plaintiffs' Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment; (7) violation of Plaintiffs' Fifth and Fourteenth Amendment rights to be free from double jeopardy; and (8) violation of Plaintiffs' Fourteenth Amendment right to privacy. (*Id.*)

On November 11, 2022, Plaintiffs filed a Motion for Preliminary Injunction asking the Court to "order Defendant Keel to remove Plaintiff Jonathan Green from the South Carolina Sex Offender Registry [] pending disposition of this action" and requesting "destruction of Defendants' fingerprint and photographic records of Plaintiff [Jonathan Green]." (Dkt. No. 87 at 1.) On November 28, 2022, the defendants named in the Second Amended Complaint filed their response to Plaintiffs' motion, (Dkt. No. 89), along with a Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 90). On December 5, 2022, Plaintiffs filed a reply to the response to their Motion for Preliminary Injunction. (Dkt. No. 91.)

Plaintiffs responded to the Motion to Dismiss on December 12, 2022. (Dkt. No. 92.) On that same day, Plaintiffs filed a Third Motion to Amend the Complaint. (Dkt. No. 93.) On December 19, 2022, the defendants named in the Second Amended Complaint filed a reply to Plaintiffs' response to their Motion to Dismiss, (Dkt. No. 94), and a response in opposition to Plaintiffs' Third Motion to Amend (Dkt. No. 95). Plaintiffs replied to the response to the Motion to Amend on December 28, 2022. (Dkt. No. 96.) On January 18, 2023, the undersigned issued an Order and Report and Recommendation denying Plaintiffs' Motion for Preliminary Injunction

3

(Dkt. No. 87) and Motion to Amend (Dkt. No. 93), and recommending that the Motion to Dismiss (Dkt. No. 90) be granted in part and denied in part. (Dkt. No. 97.) More specifically, the undersigned recommended that Plaintiffs' claim for injunctive relief against Defendant in his official capacity should survive, that Plaintiffs' remaining claims should be dismissed, and that Dorchester County, Ray Nash, and Luther Carl Knight should be dismissed from the case. (*Id.*) The Court adopted the Report and Recommendation in full on August 21, 2023. (Dkt. No. 109.)

The parties proceeded with discovery and ultimately determined that mediation would serve no useful purpose. The parties thus requested relief from the Court's mediation requirement, which was granted. (Dkt. Nos. 133, 135.) On July 31, 2024, Defendant filed the instant Motion for Summary Judgment. (Dkt. No. 144.) Plaintiffs responded on August 14, 2024, and Defendant replied on August 20, 2024. (Dkt. Nos. 145, 147.) As such, the motion before the Court has been fully briefed and is ripe for disposition.

## FACTUAL SUMMARY

The Second Amended Complaint alleges that Plaintiff Jonathan Green ("Green") was "adjudicated delinquent for three offenses in Fairfax County Juvenile Court in Fairfax[,] Virginia" in 1998. (Dkt. No. 84 at 3.) Green was fifteen years old at the time. (*Id.*) Plaintiffs state that Green's sentence "involved counseling and thirty days in the local detention center" but he "was explicitly *not* required to register as a sex offender." (*Id.*) (emphasis in original). Plaintiffs explain that "Green's case was adjudicated under seal as is typical for matters adjudicated in county juvenile courts in Virginia." (*Id.*)[3]

---

[3] The undersigned notes that Plaintiffs do not provide details regarding the Virginia delinquency adjudications, except that the proposed Third Amended Complaint states "[t]he [Virginia] Court considered the fact that Green's offense did not involve sexual intercourse . . . ." (Dkt. No. 93-1 at 3.) It is undisputed that Plaintiff Green was placed on the Registry as a result of his Virginia delinquency adjudications.

According to Plaintiffs, Green's family moved from Virginia to Dorchester County, South Carolina approximately two years after his adjudication. (*Id.*) When he arrived in South Carolina, "Green was informed that he was required to register as a sex offender and failure to do so would subject him to a criminal charge and possible imprisonment." (*Id.*) Accordingly, he registered on the South Carolina sex offender registry. (*Id.*) Plaintiffs claim that Green's information was then published on the national sex offender registry website, as well. (*Id.*) Further, Plaintiffs claim that Green was fingerprinted by law enforcement and that his fingerprints were added to a national crime database as a result. (*Id.*)

Plaintiffs allege that Green's father "presented Defendant Ray Nash [] with an affidavit from a Virginia government official" in 2007 which "indicat[ed] that Mr. Green was not required to register as a sex offender in Virginia." (*Id.* at 4.) Plaintiffs claim that Defendant Nash responded that taking Green off the South Carolina sex offender registry would be too "politically risky." (*Id.*) Plaintiffs claim that Green later moved out of South Carolina but remained on the South Carolina sex offender registry as of the date the Second Amended Complaint was filed. (*Id.*)

Plaintiffs allege that Green's father, who was employed as a deputy sheriff in Dorchester County, asked Luther Carl Knight, the Dorchester County Sheriff at that time, to remove Green from the South Carolina sex offender registry. (*Id.*) According to Plaintiffs, "Green's name was removed from the public website without notice and without warning in 2015." (*Id.*) After his father was informed that he had been removed from the South Carolina sex offender registry, Green "ran an FBI fingerprinted background check, national background check, and background checks in Virginia, Oklahoma, and South Carolina." (*Id.*) Plaintiffs claim that these background checks "showed no arrest data and showed no sex offender registry information." (*Id.*) Nonetheless, Plaintiffs claim that Green learned in 2019 that he was still on a "different registry"

which had "the effect of him being on the national sex offender database" even though his name was not on the South Carolina website. (*Id*. at 5.)

Plaintiffs claim that Green suffered the following harm "[a]s a result of being on the sex offender registry for over twenty years,"

    a.    Shame and debilitation, including having neighbors print and distribute flyers in Green's neighborhood;
    b.    Loss of reputation;
    c.    Restrictions on where Green can live, work, and conduct business;
    d.    Inability to "responsibly father children" because he would be prevented from being around his child and/or his child's friends;
    e.    Inability to travel internationally because he "is either denied the ability to do so or is harassed and detained whenever he goes through a travel checkpoint;"
    f.    Inability to find employment because he is "virtually unemployable due to his sex offender status;"
    g.    Inability to move to another state without having to register as a sex offender;
    h.    An indication on his official U.S. Government identification that he is a sex offender;
    i.    Shame and mental distress "caused by having to have his fingerprints taken" because "[f]ingerprinting was explicitly not required of Green when he was adjudicated delinquent in Virginia" and because "Green's fingerprints are now in a national database which can trigger alerts each time he travels or is required to do background checks for real estate licenses or jobs;"
    j.    Lost earnings of his company, JCGRE, Inc.

(*Id*. at 5–6.) Plaintiffs further claim that Plaintiff JCGRE, Inc. suffered harm in the form of delayed real estate licenses, resulting in lost revenue; inability to conduct business internationally, resulting in lost revenue; and loss of potential clients who have declined to do business with the company because Green is a registered sex offender. (*Id*. at 6.)

Based on the foregoing, Plaintiffs filed the instant civil action. (Dkt. Nos. 1, 8, 8-4, 84.) The Second Amended Complaint requests actual, consequential, and punitive damages, attorneys' fees, and injunctive relief in the form of:

requiring Defendants to (a) remove Green from the registry, (b) notify the United States Department of Justice of said removal, (c) destroy all information, electronic

or otherwise, that relates to Green in the possession of Defendants including his mug shot and fingerprints, (d) provide proof of all of the above to Plaintiffs, and (e) submit a letter of apology to Plaintiffs.

(Dkt. No. 84 at 13–14.)

As explained above, Plaintiff's § 1983 claim for injunctive relief against Defendant is the only claim that has survived dismissal and, as such, is the only claim currently before the Court. This claim centers on Plaintiffs' allegation that Plaintiff Green was subject to ongoing violations of his constitutional rights because he remained on the "national sex offender database." (Dkt. No. 84 at 5; Dkt. No. 97 at 22.) Because it was undisputed that Defendant had the authority to remove Plaintiff Green from the registry, Plaintiffs' injunctive relief claim against Defendant survived dismissal under the *Ex Parte Young* exception to Eleventh Amendment immunity. (Dkt. No. 97 at 21–22.)

Notably, Plaintiff has since been "cleared" from the South Carolina sex offender registry. (Dkt. No. 144-1 at 9; Dkt. No. 145 at 2.) In the wake of *Powell v. Keel*, a recent South Carolina Supreme Court case in which the court determined that South Carolina's requirement that sex offenders must register for life was unconstitutional "absent any opportunity for judicial review to assess the risk of re-offending," the South Carolina legislature passed new laws to allow a person on the sex offender registry to apply for removal. 433 S.C. 457, 476 (2021). Green filed an application pursuant to these new laws, and his application was approved. As such, he was "cleared" from the sex offender registry as of May 4, 2023. (Dkt No. 144-1 at 9.) According to Defendant,

> The "clear" function means that the Plaintiff's record is no longer available on the public registry. If a person runs a search for him on the website, it will come up with no results. If a member of law enforcement runs a search for him on the website, it will come up with no results. If a member of law enforcement runs [a National Crime Information Center ("NCIC")] criminal history for him, it will come up with no information about the [Sex Offender Registry]. Only if a member

7

of law enforcement who has access into the National [Sex Offender Registry] runs a search in the NCIC National Sex Offender Registry, using the proper coding, and specifically searching for him, will it come up "[Sex Offender Registry] removal, no longer required to register."

(*Id.* at 10.) Nevertheless, Plaintiffs contend that Green's "status as a 'former sex offender,' and SLED's retention of his information under said classification creates a substantial risk of irreparable harm for Green and his company, JGCRE." (Dkt. No. 145 at 2.) Plaintiffs assert that there is at least a question of fact on this issue and therefore request that the Court deny Defendant's summary judgment motion. (*Id.*)

## **LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

8

## DISCUSSION

Defendant first argues that he is entitled to summary judgment because the Second Amended Complaint does not contain a valid claim for injunctive relief. (Dkt. No. 144-1 at 7–8.) Defendant further argues that Plaintiffs cannot satisfy their burden to show that permanent injunctive relief is warranted here. (*Id*. at 10.) Defendant therefore claims that he is entitled to summary judgment. (*Id*.) By contrast, Plaintiffs contend that "there is, at a minimum, a genuine factual dispute as to whether or not Green is being harmed by SLED's retention of his records." (Dkt. No. 145 at 3.) Plaintiffs further argue that "the evidence developed so far" shows that Plaintiffs can satisfy the four-factor test for permanent injunctive relief, and that Defendant's motion should therefore be denied. (*Id*.) For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's summary judgment motion (Dkt. No. 144) should be **GRANTED**, and that Plaintiffs' case should be dismissed in full.[4]

### I.     Injunctive Relief as an Independent Claim

The undersigned first notes that requests for injunctive relief do not constitute independent causes of action; rather, an injunction is merely a remedy sought for legal wrongs alleged in the substantive counts. *Pinnacle Min. Co., LLC v. Bluestone Coal Corp.*, 624 F. Supp. 2d 530, 539–40 (S.D. W. Va. 2009); *see also Livingston v. Copart of Connecticut, Inc.*, No. 3:17-CV-2543-TLW, 2021 WL 12141569, at *7 (D.S.C. Mar. 26, 2021) ("[A] request for a permanent injunction is a prayer for relief, not an independent cause of action."); *Cunningham Energy, LLC v. Vesta O&G Holdings, LLC*, 578 F. Supp. 3d 798, 819 (S.D.W. Va. 2022) (dismissing causes of action for injunctive relief "in light of the principle that requests for injunctive relief are not stand-alone

---

[4] Because the undersigned recommends that Plaintiffs' case should be dismissed in full for the reasons set forth herein, the undersigned need not address Defendant's argument that Plaintiff JGCRE, Inc. is not a proper party. (Dkt. No. 144-1 at 7.)

causes of action"); *Robichaud v. Engage2Excel, Inc.*, No. 5:18-CV-00086-GCM, 2019 WL 2076561, at *5 (W.D.N.C. May 10, 2019) (dismissing the standalone cause of action for injunctive relief because "[i]njunctive relief is not a separate cause of action; rather, an injunction is a remedy to be considered once liability attaches," but considering it as a potential remedy). Accordingly, Defendant's assertion that Plaintiffs' request for injunctive relief should be dismissed because the Second Amended Complaint does not set forth a valid claim for injunctive relief and "only mention[s] [] injunctive relief [] in the prayer for relief," lacks merit. (Dkt. No. 144-1 at 7–8.)

## II.    Injunctive Relief as an Appropriate Remedy

Nonetheless, the undersigned agrees with Defendant's contention that Plaintiffs cannot make the required showing for permanent injunctive relief. At the outset, it is worth noting that "[a] party seeking a permanent injunction must demonstrate 'actual success' on the merits, rather than [the] mere 'likelihood of success' required to obtain a preliminary injunction." *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)). Here, the Court has made no determination on the merits of an underlying § 1983 claim, and Plaintiffs provide no arguments or evidence in support of any such claim. (*See generally* Dkt. No. 145.) Regardless, a permanent injunction would be inappropriate here, even if Plaintiffs could show success on the merits of an underlying § 1983 claim. Because injunctive relief is not appropriate in this instance, yet is the only remedy available to Plaintiffs, Defendant is entitled to summary judgment and this case should be dismissed in full.

### A.  Legal Standard

Injunctions are equitable remedies, deriving from the Court's inherent equitable authority, and equitable relief "is not granted as a matter of course." *Salazar v. Buono*, 559 U.S. 700, 714

(2010). Rather, injunctions are "regarded as an extraordinary remedy." 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 2942 (3d ed. 2023).

"The burden is on the party seeking injunctive relief to demonstrate its entitlement to an injunction." *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2016 WL 3475281, at *1–2 (E.D.N.C. June 17, 2016), *aff'd*, 874 F.3d 370 (4th Cir. 2017); *see also Walgreen Co. v. Sara Creek Prop. Co.*, 966 F.2d 273, 275 (7th Cir. 1992) ("The plaintiff who seeks an injunction has the burden of persuasion—damages are the norm, so the plaintiff must show why his case is abnormal."). To satisfy this burden, the party seeking a permanent injunction must demonstrate: (1) that he or she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Wudi Industrial (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 189–91 (4th Cir. June 5, 2023).

"An injunction should issue only if the traditional four-factor test is satisfied." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010). However, even where a plaintiff has satisfied the requirements for a permanent injunction, whether to grant the injunction still remains in the equitable discretion of the court. *See eBay Inc.*, 547 U.S. at 391 ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . .").

### B. Analysis

In arguing that they have satisfied their burden to show injunctive relief is necessary in this case, Plaintiffs first assert that they have suffered an irreparable injury. (Dkt. No. 145 at 4.) More specifically, Plaintiffs claim:

> Green's status as a 'former sex offender' continually causes him irreparable harm in the following ways: (1) he has nothing to show those aware of his former registration status that he should never have been on the registry to begin with, (2) he appears to have been lawfully placed on the sex offender registry to those who have access to that information, (3) despite Defendant's assurances, Green reasonably fears dissemination of this information to the general public at some point in the future, and (4) the law and SLED's policies are subject to constant change, and SLED's dissemination of photograph, fingerprints, and other information as a 'former sex offender' could, at some point, become public without [] affording Green notice or an opportunity to be heard.

(*Id.*)  As support for their assertions of harm, Plaintiffs provide deposition testimony from Bryan Ridgeway, a lieutenant at SLED who manages the South Carolina sex offender registry. (Dkt. No. 145-5.) Plaintiffs also provide a personal affidavit from Plaintiff Green, excerpts from Defendant's answers to Plaintiffs' interrogatories, and email correspondence between SLED employees pertaining to the South Carolina sex offender registry. (Dkt. Nos. 145-1, 145-2, 145-3, 145-4.)

Plaintiffs do not, however, provide any evidence indicating that Plaintiff Green "should never have been on the registry to begin with," or that he was unlawfully placed on the South Carolina sex offender registry at the time.[5] (*See generally* Dkt. Nos. 145, 145-1, 145-2, 145-3, 145-4, 145-5.) The undersigned therefore finds Plaintiffs' first two allegations of irreparable harm unconvincing.[6] Regardless, the record makes clear that Plaintiff Green has since been removed from the South Carolina sex offender registry, so a permanent injunction would not be an appropriate remedy for these alleged harms. (*See generally* Dkt. No. 145.)

Indeed, a permanent injunction is appropriate only where a plaintiff can establish a concrete threat of future or continuing injury, as "there would be little reason to enjoin conduct permanently that caused injury if it will not happen again." *Bone v. Univ. of N. Carolina Health Care Sys.*, 678

---

[5] As noted, this Court has not made any findings regarding the merits of these claims.
[6] Irrespective of Plaintiffs' failure to show that Plaintiff Green was wrongly placed on the South Carolina sex offender registry in the first instance, these allegations of harm are also unconvincing for the reasons set forth *infra*. (*See infra* at 14–17.)

F. Supp. 3d 660, 687 (M.D.N.C. 2023); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (explaining that "irreparable injury" is "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again."); *Monsanto Co.*, 561 U.S. at 162 ("A permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm."). Thus, irrespective of any irreparable harm Plaintiffs allege they have previously incurred, a permanent injunction is not appropriate here unless there is a reason to believe that future injury would constitute irreparable harm. *See Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003) ("Permanent injunctive relief requires . . . continuing irreparable injury . . . ."); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997) ("To show irreparable harm [for purposes of permanent injunction], the party seeking injunctive relief must at least demonstrate 'that there exists some cognizable danger of recurrent violation' of its legal rights." (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953))); *Millennium Funding, Inc. v. Doe*, No. 1:21-CV-282-RDA-TCB, 2021 WL 5217018, at *13 (E.D. Va. Oct. 15, 2021) (explaining that "permanent injunctive relief is appropriate" where "plaintiff . . . has demonstrated that it has suffered—and will continue to suffer –irreparable harm"). Plaintiffs have provided no explanation as to how Green having "nothing to show those aware of his former registration status that he should never have been on the registry," and Green "appear[ing] to have been lawfully placed on the sex offender registry to those who have access to that information," amount to continuing or future irreparable harm such that the extraordinary remedy of a permanent injunction is warranted.[7] (*See generally* Dkt. No. 145.)

The undersigned finds Plaintiffs' remaining assertions of irreparable injury similarly unconvincing. As noted, Plaintiffs claim that they reasonably fear dissemination of Plaintiff

---

[7] In fact, Plaintiffs provide no arguments to support these claims; Plaintiffs' response brief centers entirely on their fear of inadvertent disclosure of Green's personal information. (*See generally* Dkt. No. 145.)

Green's information to the public "at some point in the future" and that "SLED's dissemination of photograph, fingerprints, and other information . . . could at some point, become public without notice." (Dkt. No. 145 at 4.) Plaintiffs contend their fear that Plaintiff Green's information will be inadvertently disclosed to the public is reasonable because: (1) such information is accessible to law enforcement throughout the country, but SLED only provides law enforcement in South Carolina and "can't control what people in other states do"; (2) SLED has "inadvertently released information to the public before"; and (3) SLED's current policies (which provide safeguards to prevent inadvertent disclosure) may change in the future. (*Id*. at 5–6.) However, Plaintiffs contentions lack merit.

According to testimony from Bryan Ridgeway, the sex offender registry is housed within the National Crime Information Center ("NCIC") at the Federal Bureau of Investigations. (*Id*. at 6.) SLED inputs sex offender registration information into the registry,[8] and maintains a file on each person placed on the registry in its database, which is "housed in a server at SLED behind a firewall." (*Id*. at 6–7, 9.) SLED does not keep physical copies of these files. (*Id*. at 9.) For registrants who have been "cleared" from the registry, as Green was here, SLED sends "information" on those persons to the national sex offender registry but does not send fingerprints and does not send a registrant's information or fingerprints to any other outside agencies. (*Id*. at 13.) If an outside agency requests information about a certain "cleared" registrant, SLED contacts legal counsel to determine if there is a legitimate law enforcement purpose for the request before disclosing any information. (*Id*. at 13.)

Only employees of law enforcement agencies who have been trained by SLED in the use of the sex offender registry and related databases, have passed a background check, and have been

---

[8] This practice began in 2016 when SLED changed vendors for the registry database. (Dkt. No. 145-5 at 7.)

approved by SLED are allowed to access a "cleared" registrant's file. (*Id*. at 9.) Such law enforcement personnel may add or remove information in the file, but SLED is immediately notified of any changes. (*Id*. at 10.) If the change is significant, SLED employees review the change to ensure it was properly completed. (*Id*. at 11.)

Further, once someone has been "cleared" from the sex offender registry, nothing will show up on that person's NCIC criminal history, and approved law enforcement personnel need to know a certain code in order for the "cleared" registrant's information to show up in a search. (*Id*. at 14.) In other words, information for a "cleared" registrant does not show up in general searches and can only be accessed by certain law enforcement personnel using a specific coded search. (*Id*. at 11, 14.) Then, when that registrant's information appears, there is a notation that the person is "no longer required to register." (*Id*. at 11.) It is a crime under both state and federal law to improperly disseminate private information obtained from the registry. (*Id*. at 14, 16.)

Based on this testimony, the undersigned is not convinced that Plaintiffs reasonably fear irreparable harm based on law enforcement's access to Green's personal information. As explained above, such information is available to only a subset of law enforcement personnel that have been trained and vetted, and it is a crime to improperly disclose the information Plaintiffs seek to keep private. (*See supra* at 15.)

With respect to Plaintiffs' argument that SLED has inadvertently released information to the public before, the record confirms that certain information from the sex offender registry was inadvertently disclosed to the public in 2016. (Dkt. Nos. 145-2, 145-3, 145-4.) Defendant explains that this disclosure occurred when SLED switched database service providers and ran into a coding issue. (Dkt. No. 144-1 at 3; Dkt. No. 145-5 at 7.) However, Plaintiffs provide no explanation as to how or why another inadvertent disclosure of Green's information is likely and imminent. (*See*

*generally* Dkt. No. 145.) Similarly, Plaintiffs provide no support or context for their purported assertion that SLED's policies are subject to imminent change that will lead to irreparable harm. (*See generally* Dkt. No. 145.)

While the undersigned recognizes that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974), analysis of the irreparable injury requirement focuses primarily on the likelihood of *future* misconduct, and past harm is "far from dispositive on the question of irreparable future harm." *SAS Inst.*, 874 F.3d at 386. In fact, it is a basic principle of equity that the entry of a permanent injunction is appropriate only where the movant establishes that it is currently under imminent threat of suffering *further harm* in the absence of the injunctive relief sought. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59 (1975) ("[T]he usual basis for injunctive relief [is] that there exists some cognizable danger of recurrent violation." (citation and internal quotation marks omitted)); *Belk v. Charlotte–Mecklenburg Bd. of Ed.*, 269 F.3d 305, 347 (4th Cir. 2001) ("Before a court grants a permanent injunction, the court must first find necessity—a danger of future violations."); *SAS Inst.*, 874 F.3d at 385 ("Injunctions by their nature attempt to anticipate the future . . . .").

Here, Plaintiffs simply cannot make the requisite showing. Indeed, Plaintiffs' allegations of harm are unsupported by the record and/or are too attenuated to justify permanent injunctive relief. (*See generally* Dkt. Nos. 144-2, 145-2, 145-3, 145-4, 145-5.) Plaintiffs have shown nothing more than a mere *possibility* of future harm, which is insufficient to warrant the extraordinary remedy of injunctive relief. A likelihood of future irreparable harm requires proof of a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W. T. Grant Co.*, 345 U.S. at 633; *see also CSX Corp. v. Children's Inv. Fund Mgmt.*

16

*(UK) LLP*, 654 F.3d 276, 284–85 (2d Cir. 2011) ("The usual basis for prospective injunctive relief is not only irreparable harm, which is required for all injunctions, but also some cognizable danger of recurrent violation." (citations and internal quotation marks omitted)). Where, as here, the record discloses "no significant threat of future violation," *W.T. Grant Co.*, 345 U.S. at 635, the plaintiff fails to carry its burden of establishing that injunctive relief is warranted.

Further, the remaining factors cannot outweigh Plaintiffs' failure to demonstrate irreparable injury. Undeniably, "[w]hile irreparable harm is only one of the four factors the court must consider in determining whether to grant injunctive relief, it is a necessary predicate irrespective of whether the other factors are shown." *Bone*, 678 F. Supp. 3d at 687; *see also SAS Inst., Inc.*, 874 F.3d at 386 ("[R]egardless of the other factors, 'the equitable remedy of an injunction is unavailable absent a showing of irreparable injury'" (alterations omitted) (quoting *Lyons*, 461 U.S. at 111)). Plaintiffs have failed to establish an irreparable injury warranting permanent injunctive relief. As such, Defendant's summary judgment motion (Dkt. No. 144) should be **GRANTED**. Because Plaintiffs have no other available remedies in this civil action, Plaintiffs' case should be **DISMISSED**.

## CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Dkt. No. 144) be **GRANTED**, and that Plaintiffs' case be dismissed in full.

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

August 30, 2024
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).